FILED

2021 Feb-12  PM 03:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| ) | |
| **v.** ) | **No. 1:20-CR-00300-CLM-GMB** |
| ) | |
| **ANTHONY LAMON FRAZIER,** ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

A jury found Anthony Lamon Frazier guilty of intentionally possessing with the intent to distribute 50 or more grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). Frazier moves for a judgment of acquittal (doc. 43) or a new trial (doc 45). Frazier also requests a hearing on his motion for new trial (doc. 47). Within, the court explains why Frazier's motions are due to be **denied**.

## MOTION FOR JUDGMENT OF ACQUITTAL

The court first addresses Frazier's motion for judgment of acquittal (doc. 43).[1] A defendant may move for a judgment of acquittal under Rule 29, and the court must acquit the defendant "of any offense for which the evidence is insufficient to sustain

---

[1] Several arguments that Frazier advances in support of his motion for judgment of acquittal overlap with the arguments made in his motion for new trial. As for Frazier's motion for judgment of acquittal, the court only addresses whether there is sufficient evidence to sustain his conviction because it finds that Frazier's other arguments are better analyzed under the standards applicable to motions for a new trial.

1

a conviction." *See* Fed. R. Crim. P. 29(a), (c). In reviewing a motion for judgment of acquittal, this court "must decide whether the evidence, examined in a light most favorable to the Government, was sufficient to support the jury's conclusion that the defendant was guilty beyond a reasonable doubt." *See United States v. Williams*, 390 F.3d 1319, 1323 (11th Cir. 2004) (internal quotations and citations omitted). "All credibility choices must be made in support of the jury's verdict." *Id.*

To secure a conviction under 21 U.S.C. § 841(a), the government had to prove that Frazier knowingly possessed methamphetamine and intended to distribute it. *See* 21 U.S.C. § 841(a)(1). To enhance Frazier's sentence, the government had to show that Frazier possessed and intended to distribute at least 50 grams of methamphetamine. *See* 21 U.S.C. § 841(b)(1)(A).

At trial, a confidential informant testified that, while working with ATF agents, he called Frazier to set up a drug buy of two pounds of methamphetamine for $9,000. The confidential informant said that on the day of the controlled drug buy he traveled to a convenience store in Talladega, Alabama where he paid a man named Jeremey Rivers the $9,000. The confidential informant then testified that he went to Roosevelt Avenue where he saw Frazier drive up in a "city" or "government" work truck. According to the confidential informant, when Frazier pulled away, the confidential informant retrieved a bag that Frazier had thrown out of his truck. The

confidential informant gave the bag to the ATF agents he was working with, and lab testing revealed that it contained about one-and-a-half pounds of methamphetamine.

Frazier points out that the confidential informant does not have a recording of him dropping off the drugs on Roosevelt Avenue or a recording of Rivers taking the $9,000. Frazier also notes that the government never established the exact nature of the relationship between Rivers and Frazier. But the jury had a right to credit the confidential informant's version of events. Viewing the evidence in the light most favorable to the government, the court finds that there was sufficient evidence to support the jury's conclusion that Frazier knowingly possessed, with the intent to distribute, at least 50 grams of methamphetamine. So the court will **deny** Frazier's motion for a judgment of acquittal (doc. 43).

## MOTION FOR NEW TRIAL

The court next considers Frazier's motion for new trial. "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Frazier argues that he was denied a fair trial because: (1) the verdict is against the weight of the evidence, (2) the court allowed the government to introduce 404(b) evidence of a narcotics detection canine signaling the presence of a controlled substance in Frazier's vehicle, (3) the agent and confidential informant gave false testimony at trial, and (4) the government

withheld evidence from him in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). The court will address each argument in turn.

### A.     Weight of the Evidence

Frazier first argues that he should get a new trial because his conviction is against the weight of the evidence. "A motion for a new trial based on the weight of the evidence is not favored and is reserved for really exceptional cases." *United States v. Brown*, 934 F.3d 1278, 1297 (11th Cir. 2019) (internal quotations and citations omitted). "For a new trial to be warranted, the evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *Id.* (cleaned up). The standards for granting a motion for judgment of acquittal and a motion for new trial based on the weight of the evidence are similar, but they are not identical. *See id.* For example, "[a] district court may grant a new trial based on the weight of the evidence even if the evidence is sufficient to convict in the 'rare' case in which the evidence of guilt although legally sufficient is thin and marked by uncertainties and discrepancies." *Id.* (internal quotations and citations omitted).

Frazier has not shown that the evidence presented at trial was "marked by uncertainties and discrepancies." And as explained above, there was sufficient evidence for the jury to find Frazier guilty, so the evidence did not preponderate

heavily against the verdict. So the court rejects Frazier's argument that his conviction was against the weight of the evidence.

### B.   Rule 404(b)

Frazier also argues that he was denied a fair trial because the court allowed the government to introduce video evidence of a drug dog alerting to the presence of a controlled substance in his Talladega county work truck. Rule 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). But this evidence may be admissible for another purpose, such as proving motive, opportunity, intent, plan, or identity. Fed. R. Evid. 404(b)(2). The court allowed the government to show the jury the video evidence of the drug dog to prove Frazier's identity.

The Eleventh Circuit applies a three-part test to determine whether evidence of a crime, wrong, or other act is admissible under Rule 404(b). "First, the evidence must be relevant to an issue other than the defendant's character." *United States v. Diaz-Lizaraza*, 981 F.2d 1216, 1224 (11th Cir. 1993). Then, "as part of the relevance analysis, the evidence must be sufficient to support a finding that the defendant actually committed the extrinsic act." *Id.* Finally, "the probative value of the evidence must not be substantially outweighed by unfair prejudice." *Id.*

The "application of this test to evidence introduced under Rule 404(b) var[ies] depending on the issue for which it was offered." *United States v. Phaknikone*, 605 F.3d 1099, 1108 (11th Cir. 2010) (internal quotations and citations omitted). And "evidence offered to prove identity must satisfy a 'particularly stringent' analysis." *Id.* The crucial consideration is the likeness of the offenses, and the two offenses must be so similar that they evidence a modus operandi. *See id.* "Evidence cannot be used to prove identity simply because the defendant has at other times committed the same commonplace variety of a criminal act." *Id.* (cleaned up).

Evidence of the drug dog indicating drugs in Frazier's Talladega County work truck was relevant to proving his identity. Throughout trial, Frazier questioned the confidential informant and case agent's ability to identify him as the person who distributed methamphetamine during the controlled drug buy. As a result, Frazier made identity a primary issue at trial.

And the transportation of drugs in Frazier's work truck was sufficiently similar to the distribution of the methamphetamine during the controlled drug buy to meet the standards for admissibility under Rule 404(b). The confidential informant testified that he saw Frazier drive up to Roosevelt Avenue in a white "city" or "government" work truck and throw a white bag out the window. The white bag was then later found to contain about one-and-a-half pounds of methamphetamine. Several months later, a drug dog signaled that narcotics had been present in a

Talladega County work truck belonging to Frazier and matching the description provided by the confidential informant.[2] The court finds that the transportation of drugs in a county work truck is not so "commonplace" that any individual could have done it. *See id.* So the government satisfied the first-prong of the Rule 404(b) test.

But Frazier argues that evidence that he transported drugs in his work truck around August 2020, when the drug dog signaled the presence of narcotics in his vehicle, is "unsupported." Frazier also contends that about a month after the videos shown at trial were taken, the same drug dog alerted to the presence of drugs in his work truck, but the testing of bottles seized from Frazier's truck failed to show the presence of drugs. According to Frazier, these subsequent events cast doubt on the accuracy of the drug dog's hit on his work truck.

The court notes that Frazier did not make this argument when moving to exclude the videos of the drug dog either before or during trial. Nor has Frazier presented evidence that shows that bottles seized from his truck tested negative for the presence of narcotics. But the government does not dispute that this testing happened during a larger investigation into Frazier. *See* Doc. 46 at 7. So the court will assume that Frazier's description of these events is accurate.

---

[2] The court recognizes that the confidential informant testified that he saw Frazier driving a "city" work truck but notes that his description of the work truck generally matches the description of the work truck that Frazier drove for Talladega County.

Even so, the court finds that the government met its burden to show that the drug dog accurately detected narcotics inside Frazier's work truck. Under the second prong of the Eleventh Circuit's Rule 404(b) test, the government only had to present enough evidence for the jury to find by a preponderance of the evidence that Frazier had had narcotics inside his work truck. *See United States v. Edouard*, 485 F.3d 1324, 1345 (11th Cir. 2007). And at trial, the government presented video evidence of a trained narcotics dog alerting to the presence of narcotics in a work truck that a Talladega County Drug Task Force agent testified that he knew Frazier drove.

The agent also testified about the dog's extensive training in narcotics detection and his belief that this dog was the best trained narcotics canine that he had ever seen. The agent stated that based on his observations this dog had never had a false positive hit on narcotics—*i.e.*, the dog only alerts to the presence of narcotics when narcotics had been or were present at that location. Frazier's contention that bottles seized from his truck tested negative for narcotics does not undermine this evidence, especially considering that the dog alerted to the presence of narcotics in the truck, not specifically to the presence of narcotics in the bottles. The court thus determines that a reasonable jury could find by a preponderance of the evidence that Frazier committed the extrinsic act admitted under Rule 404(b).

Finally, the court addresses whether the probative value of the drug dog videos was substantially outweighed by unfair prejudice to Frazier. Again, Frazier's identity

was one of the main issues at trial. And the confidential informant testified that Frazier was driving a white government work truck during the controlled drug buy. So evidence that drugs had been present in Frazier's work truck was highly probative. And while Frazier was at least somewhat prejudiced by the drug dog videos, the court finds that the videos were not unduly prejudicial. The court gave two limiting instructions related to this evidence. First, just before the government played the videos, the court instructed the jury that the jury could only use this evidence to consider whether the videos suggest that the same person committed the acts charged in the indictment. Second, at the close of trial, the court instructed the jury that Frazier was only on trial for the crime charged in the indictment and that the jury may not convict him for an act committed at another time. These limiting instructions mitigated any unfair prejudice to Frazier. *See id.* at 1346. So the probative value of the videos was not substantially outweighed by unfair prejudice.

Because all prongs of the Rule 404(b) test are met even when considering Frazier's allegations about the bottles taken from his truck, the court finds that the introduction of the videos of the drug dog does not entitle Frazier to a new trial.

### C.   Alleged False Testimony of Confidential Informant & Special Agent

Frazier next asserts that the government violated his due process rights by knowingly offering false testimony from the confidential informant and case agent Carrie Lane. To obtain a new trial on this basis, Frazier must show "that the

prosecutor knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony, and that the falsehood was material." *United States v. Vallejo*, 297 F.3d 1154, 1163–64 (11th Cir. 2002) (internal quotations and citations omitted).

Frazier points to two categories of testimony that he says was false: (1) testimony from the confidential informant about how he paid the $9,000, and (2) testimony from Agent Lane related to cell phone calls. The court addresses each category of testimony in turn.

1. Confidential informant: Frazier argues that the confidential informant's testimony about how the drug transaction occurred must be false because it contradicts testimony from Agent Lane during Frazier's detention hearing.[3] As detailed above, the confidential informant testified at trial that he went to a convenience store and paid $9,000 for the methamphetamine to a man named Jeremy Rivers. The confidential informant then said that he went (by himself) to Roosevelt Avenue where he saw Frazier drive by and drop off the methamphetamine. At the detention hearing, Agent Lane testified that the confidential informant told her that he met with Rivers at the convenience store and then left the store with Rivers to go to Roosevelt Avenue and see if the drugs were ready. She then stated that once the

---

[3] The government contends that this testimony is from Frazier's grand jury proceedings, not the detention hearing.

two men arrived together at Roosevelt Avenue, the confidential informant saw Frazier's truck and paid Rivers the $9,000. According to Agent Lane, the confidential informant told her that when he paid Rivers the $9,000, Frazier's truck drove off, and he saw a that a bag had been left near a curb where Frazier had parked the truck.

Agent Lane's testimony at the detention hearing about what the confidential informant told her slightly contradicts the confidential informant's testimony at trial. But their stories were generally consistent: the confidential informant met up with Rivers at a convenience store and then went to Roosevelt Avenue where he saw Frazier drop off a bag filled with methamphetamine. And the fact that two witnesses have different memories of an incident "falls far short of establishing that the government had knowledge of false testimony being presented to the jury." *See United States v. Lopez*, 985 F.2d 520, 524 (11th Cir. 1993). In fact, it is just as likely that the confidential informant, and not Agent Lane, accurately described what happened during the controlled drug buy. So the court finds that Frazier has failed to show that the government knowingly allowed the confidential informant to perjure himself at trial.

2. Cell phone calls: Frazier asserts that Agent Lane made three false statements related to the cell phone call that set up the controlled drug buy. First, Frazier contends that Agent Lane testified falsely when she said that it was her

opinion that Frazier was the person on the phone with the confidential informant because she had heard his voice before in jail phone calls. Second, Frazier alleges that Agent Lane falsely testified when she stated that in meetings before setting up the controlled drug buy, the confidential informant had identified the number that he called to set up the drug buy as belonging to Frazier. Finally, Frazier states that Agent Lane falsely testified that she ran a search on the cell phone number that the confidential informant called and that the number came back to a prepaid phone.

Frazier has failed to prove that any of Agent Lane's testimony related to the cell phone calls was false. Nor has he shown that the government knew that Agent Lane perjured herself. Instead, Frazier merely speculates that Agent Lane's testimony about hearing Frazier speak on jail calls and being told his phone number before the confidential informant set up the controlled drug buy must be false because he received no discovery from the government that revealed these facts. And he argues that Agent Lane must have lied about tracing the cell phone number to a prepaid phone because after trial his attorney ran a search on the cell phone number and it came back to a person other than Frazier.

Just because Frazier received no discovery about certain aspects of Agent Lane's testimony does not mean that Agent Lane's testimony was false, much less that the government knew it was false. That is all the more true because Agent Lane did not testify about having heard Frazier's voice before or having been told that the

cell phone number belonged to Frazier until Frazier's attorney asked questions related to these topics on cross examination. And Agent Lane testified that she was "not a hundred percent certain" but "believe[d]" her search of the number given to her by the confidential informant "came back to a prepaid telephone." *See* Doc. 42 at 37. So the court highly doubts that the government *knew* Agent Lane's testimony related to the search results of the cell phone number was false. The court will not grant Frazier a new trial based on his argument that the government knowingly presented false testimony in violation of his right to due process.

### D.     Alleged *Brady* violations

Frazier finally argues that the government suppressed evidence related to the alleged false testimony in violation of *Brady*. *Brady* requires the government "to turn over to the defense evidence that is favorable to the accused." *United States v. Jordan*, 316 F.3d 1215, 1251 (11th Cir. 2003). And "[i]mpeachment evidence should be disclosed in time to permit defense counsel to use it effectively in cross-examining the witness." *Id.* at 1253.

But the government's obligations under *Brady* are limited to evidence that is material. "Accordingly, under Brady, the government need only disclose during pretrial discovery (or later, at the trial) evidence which, in the eyes of a neutral and objective observer, could alter the outcome of the proceedings." *Id.* at 1252. Impeachment evidence is material if it "is likely to cast doubt on the reliability of a

witness whose testimony may well be determinative of guilt or innocence." *See id.* at 1253 (internal quotations and citations omitted).

1. Cell phone related evidence: The court rejects Frazier's argument that the government violated *Brady* by suppressing evidence related to Agent Lane's testimony about the cell phone call for three reasons. First, the government only violates *Brady* when it withholds exculpatory evidence from the defense. *See Jordan*, 316 F.3d at 125. And evidence that Agent Lane could identify Frazier's voice during the call setting up the drug buy, had been previously told that the number the confidential informant called belonged to Frazier, and traced the cell phone number to a prepaid phone was inculpatory evidence helpful to only the government.

Second, although Agent Lane's testimony that she could identify Frazier's voice during the call setting up the drug buy might be material, evidence that Agent Lane had been told the cell phone number belonged to Frazier and had traced the number to a prepaid phone is not. Agent Lane testified multiple times at trial that although the confidential informant had told her that the cell phone belonged to Frazier, she had not been able to definitively tie the number to Frazier. And Agent Lane testified that she merely "believe[d]" she had found out through investigation that the cell phone number the confidential informant gave her came back to a prepaid phone. Given the context of Agent Lane's testimony about whether the cell

phone number belonged to Frazier and her admitted inability to tie the phone number to Frazier, the court finds that disclosing this testimony to the defense before trial would not have altered the outcome of the proceedings.

Finally, Frazier has failed to show that the government had evidence in its possession that would have shown that Agent Lane's testimony was false. To the extent that Frazier even makes this argument, he merely states that "the government suppressed the evidence that would have shown the testimony was in fact false that was used to convict the defendant." *See* Doc. 47 at 2. This conclusory assertion falls far short of meeting Frazier's burden to show a due process violation under *Brady*.

2. Detention hearing testimony: The court also rejects any argument Frazier may be making that the government violated *Brady* by suppressing evidence of Agent Lane's testimony at the detention hearing. The government states that it gave Frazier a transcript of Agent Lane's testimony on November 30, 2020 (*i.e.*, the first day of trial). Frazier does not dispute this statement. Nor has he argued that he did not receive the transcript in time to effectively impeach either Agent Lane or the confidential informant on cross-examination. In short, Frazier has failed to show that the government's handling of this transcript violated *Brady*. So the court can discern no reason under *Brady* to grant Frazier's motion for new trial.

\* \* \*

Because none of Frazier's arguments in favor of a new trial have merit, the court will **deny** Frazier's motion for a new trial (doc. 45).

## MOTION FOR EVIDENTIARY HEARING

Frazier finally moves for an evidentiary hearing on his motion for new trial (doc. 47). According to Frazier, "[a] hearing on the motion for new trial will show that the Government knew or should have known about [the confidential informant and Agent Lane's] false statements and that there is no evidence to support that the testimony of the CI and the agent were not false." Doc. 47 at 2.

"[P]ost-trial discovery or an evidentiary hearing based upon mere speculation that it could produce helpful information is not appropriate." *See United States v. Sotolongo*, 748 F. App'x 879, 886 (11th Cir. 2018). And "[a]bsent some evidence suggesting wrongdoing," this court is "not obligated to grant a hearing" on a motion for new trial. *See United States v. Champion*, 813 F.3d 1154, 1171 n.25 (11th Cir. 1987). As explained above, even accepting as true Frazier's allegations about the bottles seized from his truck, the introduction of the 404(b) evidence does not entitle Frazier to a new trial. And Frazier has offered only speculation and conjecture to support his arguments that the government knowingly offered false testimony at trial and withheld evidence in violation of *Brady*. So the court will **deny** Frazier's motion for evidentiary hearing (doc. 47).

16

## <u>CONCLUSION</u>

For these reasons, the court **DENIES** Frazier's motion for judgment of acquittal (doc. 43), motion for new trial (doc. 45), and motion for evidentiary hearing (doc. 47).

**DONE** and **ORDERED** this February 12, 2021.

_____

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE